UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JASON G. SPENCER                                                                                      PLAINTIFF

      VS.                               Civil No. 3:14-cv-03073-MEF

CAROLYN W. COLVIN,                                                                               DEFENDANT
Commissioner of Social Security Administration

### MEMORANDUM OPINION

Plaintiff, Jason G. Spencer, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.     Procedural Background:

Plaintiff filed his application for DIB on October 28, 2011, alleging an onset date of August 1, 2010, due to depression, social anxiety, arthritis in his back, migraines, bone spurs growing on his spine, and bulging discs in his upper back. (T. 191) Plaintiff's application was denied initially and on reconsideration. (T. 75-77, 80-82) Plaintiff then requested an administration hearing, which was held via teleconference where the Plaintiff was located in Harrison, Arkansas, and the Administrative Law Judge ("ALJ"), Hon. Ronald L. Burton, was located in Fort Smith, Arkansas on December 4, 2012.  Plaintiff was present and had a representative present.

1

At the time of the hearing, Plaintiff was 44 years of age and had the equivalent of a high school education. (T. 36) Plaintiff's past relevant work experience included working as a building maintenance supervisor from November 1994 through May 2001, an invoicing supervisor from May 2001 through December 2008, and an invoicing associate from December 2008 through September 2011. (T. 181)

On May 23, 2013, the ALJ found Plaintiff's depression and disorder of the thoracic spine severe. (T. 15) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of his impairments, the ALJ concluded Plaintiff was not disabled from August 1, 2010[1], through the date of his Decision issued May 23, 2013. The ALJ determined Plaintiff had the RFC to perform sedentary and light work except that he did not have the attention span to perform skilled work and could not have regular contact with coworkers with whom he was not well acquainted.  Plaintiff could not interact with the public.  He could perform unskilled work that was task oriented and performed in small groups, meaning 20 or 25 employees or less. (T. 17)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on June 26, 2014. (T. 1-6) Plaintiff then filed this action on July 18, 2014. (Doc. 1) This case is before the undersigned pursuant to consent of the parties. (Doc. 6) Both parties have filed briefs, and the case is ready for decision. (Doc. 12 and 13)

## II.     Applicable Law:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the

---

[1] The ALJ determined Plaintiff engaged in substantial gainful activity from August 1, 2010, through July 25, 2011, and rendered him not disabled during that time period. (T. 14)

Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy

given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III.    Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that the Plaintiff had not been disabled from the onset date of August 1, 2010, through the date of the ALJ's Decision issued May 23, 2013. Plaintiff raises three issues on appeal, which can be summarized as: (A) the ALJ erred in the weight assigned to the treating physician's medical source statement; (B) the ALJ erred in step-two of his analysis; and, (C) the ALJ's Decision was not supported by substantial evidence. (Doc. 12, pp. 11-15) The undersigned concludes that disposition of the first issue regarding the ALJ's error in assignment of the weight to the treating physician's medical source statement and development of record requires reversal and remand, so the remaining issues are not addressed herein.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### Fully and Fairly Develop the Record:

In making his RFC determination the ALJ rejected the medical source statements provided by Plaintiff's treating physician, Dr. Kevin Jackson, on September 6 and September 24, 2012, as the medical source statements were inconsistent with Dr. Jackson's medical records and other treatment records. (T. 19) The ALJ instead relied on the RFC assessment performed on December 15, 2011, by non-examining state agency consultant Dr. Stephen A. Whaley. (T. 20) The Court

4

does not dispute that Dr. Whaley is well versed in the area of social security, but his opinion was issued *before* Plaintiff's car accident in which he suffered multiple thoracic fractures. Although Dr. Whaley's opinion might have been a true depiction of Plaintiff's physical capabilities at the time he completed the assessment, it was not a true depiction of what the Plaintiff could perform following his motor vehicle accident. In order for the ALJ to have made an informed decision, he should have ordered an additional physical consultative examination.

The ALJ owes a duty to a Plaintiff to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).

Before addressing the development of the record, the Court must first address Plaintiff's pain seeking behavior. Plaintiff had a longstanding battle with his Opioid addiction. (T. 355) Dr. Jackson tapered off his medications and refused to dispense any pain medications. (T. 410, 439) Moreover, Plaintiff sought treatment from Dr. William S. Piechal for chronic pain management. (T. 388) Plaintiff also sought treatment from David Bailey, LCSW, for his depression and anxiety following a suicide attempt in August 2010. (T. 262, 293, 315, 317) Plaintiff continued to struggle with emotional problems and his addiction.

Plaintiff was involved in a motor vehicle accident in February 2012. He suffered compression fractures of at least T3, T4, and T5 and was admitted to the hospital. (T. 768) A computerized tomography ("CT") scan performed on February 13, 2012, showed his T1 as well as other vertebral bodies could be involved. There were "posterior spinous process fractures of the T3 and T4, the

5

T3, T4, and T5 thoracic vertebral body compression fractures appear[ed] to involve[d] although m[ight] not be restricted to each superior endplate. Neurosurgical consultation [wa]s recommended as it appear[ed] that force [h]as been transmitted posteriors to involve at least 2 posterior spinous processes." (T. 768)

On February 14, 2012, a Magnetic Resonance Imaging ("MRI") of the thoracic spine showed acute trabecular microfracture of the T7 corpus without significant loss of height. Acute superior endplate compression fracture with minimal loss of height at T1 and T2 and mild loss of height at T3, T4, and T5. Nondisplaced fractures through the posterior aspect of the T3 spinous process. (T. 620) Interspinous ligamentous sprain from C6 through T4 and probably at T4-5. Ligamentum flavum appeared disrupt at C7-T1, suggesting that this might be an unstable segment. (T. 620)

On February 15, 2012, Plaintiff's discharge diagnosis was thoracic fracture - T7 corpus trabecular micro-fracture, anterosuperior end plate compression fractures of T1 and 2 without loss of height; T3, 4, 5, with mild loss of height; nondisplaced fracture of the posterior aspect of the T3 spinous process; tiny thoracic syrinx T7 through T11; and, degenerative disc disease with small disc protrusion at T8-9. (T. 530) Plaintiff had problems with hypertension at the hospital, and he was restarted on his medication. (T. 531)

A nurse's note from February 28, 2012, recommended Plaintiff come in for an appointment to Dr. Piechal's office after receiving a letter from someone who was concerned about his use of medication. (T. 973) While Plaintiff wanted to be pain free, the nurse informed him that with his condition he would never be pain free and their job was to make him comfortable. (T. 973) The nurse also indicated frequent periods of bed rest were ordinary. (T. 973) The nurse directed him to take ibuprofen, ice the lumbar area, and take the narcotic as directed at times when he could be supine and rest with ice to the painful area. (T. 973)

6

In March 2012, Plaintiff indicated to Dr. Jackson he wanted to be prescribed a muscle relaxer, because he wanted to stay away from pain medication. (T. 622) In May 2012, Plaintiff sought treatment from Dr. Ira Chatman at Interventional Pain Management Associates due to mid back, neck, shoulder, and head pain. (T. 946) On May 1, 2012, Dr. Chatman observed Plaintiff had a grossly unstable cervical spine, bilateral palpation of the cervical facets was painful, and Plaintiff had a greatly reduced range of motion. (T. 956) Upon examination of Plaintiff's thoracic spine, Dr. Chatman observed Plaintiff had palpation of bilateral thoracic facets, reproduced back pain; hyperextension; bilateral facet loading maneuvers, reproduced mid back pain; and, multiple palpable trigger points. (T. 956) Plaintiff's examination of his lumbar spine showed greatly reduced range of motion in most directions; hyperextension at lumbar spine, reproduced back pain; bilateral facet loading maneuvers, reproduced back pain; bilateral rotation caused pain; and, multiple trigger point palpable in bilateral paraspinal muscles; however, stooping forward slightly gave the Plaintiff some relief. (T. 956) Plaintiff's left knee was tender to palpation. (T. 957) Plaintiff was prescribed Suboxone. (T. 958)

Plaintiff overdosed on May 9, 2012, after running out of Suboxone. Plaintiff was upset and subsequently took five Clonazepam, instead of one, and four Gabapentin to calm down. (T. 818, 825, 828) Following Plaintiff's overdose, Dr. Chatman ordered Plaintiff to perform a pill count. (T. 942) On October 29, 2012, Plaintiff reported to Dr. Jackson that he attended Alcoholics Anonymous meetings and had been sober for a week and a half. (T. 983)

A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations. See *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (observing that claimant's "drug-seeking behavior further discredits her allegations of disabling pain"); *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003). However, unlike *Anderson*, the Plaintiff's medical evidence

substantiated Plaintiff's subjective complaints of pain after his accident, and the ALJ owed a duty to the Plaintiff to fully and fairly develop the record.

In determining Plaintiff's RFC, the ALJ utilized the physical RFC assessment Dr. Whaley conducted. After reviewing the records available to him, Dr. Whaley determined Plaintiff could occasionally lift twenty pounds; frequently lift ten pounds; sit, stand, and/or walk about six hours in an eight hour workday; and, he was occasionally limited to climbing, balancing, stooping, kneeling, crouching, and crawling. (T. 464-495) Dr. Whaley determined Plaintiff had the RFC to perform light work with postural limitations. (T. 500)

While the ALJ agreed with Dr. Whaley that the Plaintiff could perform work at a light exertional level, the ALJ gave little weight to Dr. Whaley's postural limitations. The ALJ based his decision on the fact that the Plaintiff indicated in his function report he did not have any problems with stair climbing, kneeling, squatting, or bending. (T. 20, 199) Further, the Plaintiff's testimony did not show he had substantial difficulties with postural activities other than to state his knees and lower back hurt when he bent over. (T. 20)

Whereas Dr. Whaley opined Plaintiff could perform light work, Dr. Jackson determined Plaintiff's limitations would prevent him from even working a sedentary job. On September 6, 2012, Dr. Jackson perform a physical capabilities evaluation. (T. 975) Dr. Jackson indicated Plaintiff could sit for three hours in a workday and stand/walk less than one hour in a workday. (T. 975) Plaintiff would need an opportunity to alternate sitting and standing throughout the day. (T. 975) Plaintiff could not adequately handle pushing and pulling. (T. 975) Plaintiff could frequently lift less than ten pounds, occasionally lift eleven to fifty pounds, and never lift over fifty pounds. (T. 976) Plaintiff could frequently balance, but he could never climb or crawl and only occasionally stoop, kneel, crouch, or reach above the shoulder level. (T. 976) Plaintiff was mildly limited to

being around unprotected heights, moving machinery, driving automotive equipment, and exposure to dust, fumes, and gases; however, he was moderately restricted from exposure to marked changes in temperature and humidity. (T. 976) Plaintiff suffered from pain due to multiple spine compression and rib fractures. (T. 977) Plaintiff's pain and/or its side effects of medication moderately affected his attention and concentration, and Dr. Jackson believed Plaintiff's pain would prevent the him from working full time even at a sedentary position. (T. 977-978)

On September 24, 2012, Dr. Jackson filled out a form entitled cervical and lumbar spine medical assessment questionnaire. (T. 1016) Dr. Jackson had treated the Plaintiff since 2006 for degenerative disc disease of the cervical, thoracic, and lumbar spine, and compression fractures of the thoracic spine. (T. 1016) Plaintiff suffered from chronic pain in his back and neck radiating around his chest or right side.  Plaintiff had tenderness, muscle spasms, muscle weakness, chronic fatigue, weight change, sensory changes, impaired sleep, abnormal posture, atrophy, dropped things, and a reduced grip strength. (T. 1016)

Plaintiff had significant limited range of motion in his cervical spine exhibiting seventy percent extension, left and right rotation, left and right lateral bending, and fifty percent flexion. (T. 1016) Plaintiff also had chronic headaches, photophobia associated with his chronic pain of his cervical spine, depression and anxiety. (T. 1016-1017) Associated with his headaches Plaintiff had photosensitivity, inability to concentrate, exhaustion, mood changes, and mental confusion. (T. 1017) Plaintiff had approximately seven headaches per week lasting approximately four hours. His headaches subsided if he lied down, took medication, was in a quiet place, or in a dark room. (T. 1017) Dr. Jackson indicated Plaintiff's response had been minimal to medications.  He did not consider Plaintiff to be a malingerer. (T. 1017)

Dr. Jackson opined Plaintiff's pain and other symptoms would constantly interfere with his attention and concentration needed to perform even simple work tasks. Plaintiff was also incapable of a low stress jobs due to his difficulty concentrating from his pain and head injury. (T. 1018) Plaintiff could only walk two city blocks without resting or being in severe pain. (T. 1018) During an eight-hour workday with normal breaks, Dr. Jackson opined Plaintiff could sit for about two hours and stand/walk less than two hours. (T. 1018) Plaintiff would need to get up every sixty minutes and walk for approximately two minutes. (T. 1018) Plaintiff would also need to shift positions at will and have unscheduled breaks every hour during which he would need to rest his head on a high back chair. (T. 1018)

Dr. Jackson opined Plaintiff could occasionally lift less than ten pounds, rarely lift twenty pounds, and never lift fifty pounds. (T. 1019) Plaintiff could rarely look down or up, occasionally turn his head to the right or left, and hold his head in a static position. (T. 1019) Plaintiff could occasionally twist, stoop, crouch, squat, and climb stairs and rarely climb ladders. (T. 1019) Due to Plaintiff's impairments, he would likely miss more than four days per month. Dr. Jackson indicated the earliest date of the symptoms and limitations in the questionnaire applied given the medical history, clinical history, and medical records was June 20, 2012. (T. 1020)

The ALJ discounted Dr. Jackson's medical source statements because he found them to be not fully consistent with his treatment records or those from other treating physicians (T. 19), because they did not take into account Plaintiff's pain seeking behavior, and because they were inconsistent with Plaintiff's function report. (T. 20) The Eighth Circuit has recognized "an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders

10

inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted).

Discounting Dr. Jackson's medical source statements causes the Court concern. First, Dr. Jackson had been treating the Plaintiff since 2006, and he did not find the Plaintiff to be a malingerer. Further, for the ALJ to discount Dr. Jackson's opinion because his findings were inconsistent with the function report was error since Plaintiff's function report was completed in November 2011, and he subsequently suffered multiple thoracic fractures in February 2012. The ALJ should reassess Dr. Jackson's medical source statements upon remand. If, on remand, the ALJ determines Dr. Jackson's medical source statements continued to be inconsistent with the treatment records, he should elaborate on the specific inconsistencies.

While the Plaintiff exhibited signs of pain seeking behavior, it did not negate the fact the ALJ based his Decision on an RFC performed in 2011, which was prior to the motor vehicle accident in which Plaintiff suffered multiple thoracic fractures. For the ALJ to discount Dr. Jackson's reports and base his RFC upon Dr. Whaley's 2011 opinion was error. There was no current medical opinion for the ALJ to base his RFC upon to show what the Plaintiff was actually capable of performing in a competitive work environment. In *McCoy,* 683 F.2d at 1147 (abrogated on other grounds by *Forney v. Apfel,* 524 U.S. 266, 267, 118 S.Ct. 1984, 141 L.Ed.2d 269 (1998)), the Eighth Circuit noted that the residual functional-capacity evaluation must be a realistic evaluation of Plaintiff's ability to work "day in and day out ... in the sometimes competitive and stressful conditions in which real people work in the real world." The ALJ should have ordered an additional consultative examination in order to have made an informed decision regarding Plaintiff's RFC determination. See *Gasaway v. Apfel*, 187 F.3d 840, 842 (8th Cir. 1999); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) ("[I]t is reversible error for an ALJ not to order a

11

consultative examination when such an evaluation is necessary for him to make an informed decision." (citation and internal quotes omitted)).

When Plaintiff suffered multiple thoracic fractures, the results of the CT scan of his thoracic spine indicated a neurosurgical consultation was recommended; however, the Court was unable to determine if a consultation was performed. (T. 768) Therefore, on remand, the ALJ is directed to order a neurosurgical consultation complete with a detailed RFC (a check-the-box form is not appropriate). The RFC should explain, based upon the evidence, what the Plaintiff can and cannot perform; the amount of weight he can lift; and, set forth any limitations and restrictions.

### IV.    Conclusion:

Based on the foregoing, I must reverse the decision of the ALJ and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 26th day of October, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE